UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMIK HOPKINS MINTER ARI, et al.,<br>　　　　　Plaintiffs,<br>　　v.<br>MARK EDWARD GALIOS,<br>　　　　　Defendant. | Case No. 12-cv-02905-JSC<br><br>**SECOND PRETRIAL ORDER** |

In this civil rights case arising out of Defendant Mark Galios' use of deadly force against decedent Akinlabi Minter, the parties have filed motions in limine regarding the upcoming jury trial (Dkt. Nos. 86-90, 92-95), as well as other briefing addressing damages issues (Dkt. Nos. 85, 101). Plaintiffs have also moved to amend the operative complaint to add a claim under the Fourteenth Amendment to the United States Constitution. (Dkt. No. 108). Finally, Galios has moved to bifurcate the amount of punitive damages at trial. (Dkt. No. 86.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on February 27, 2014, the Court rules on the motions as set forth below. In addition, the Court sets a further pretrial conference for April 3, 2014 at 2:00 p.m.

**DISCUSSION**

**A.   Plaintiffs' Motion to Amend**

At the pretrial conference, the Court granted Plaintiffs' request for leave to file a motion to amend the operative complaint to add a claim alleging that Galios' use of deadly force against Minter violated Plaintiffs' own rights under the Fourteenth Amendment. Plaintiffs request to add the new claim so they may seek damages for the loss of familial relations between themselves and Minter, their father. The parties only realized just prior to the pretrial conference that such

damages cannot be sought in connection with Plaintiffs' Fourth Amendment survivor's claim; Plaintiffs' own Fourteenth Amendment claim is required. Because Defendant will not be prejudiced by the amendment and, indeed, filed motions in limine which assumed that Plaintiffs could seek damages for the loss of familial relations, the Court GRANTS the motion; however, the Court STRIKES Plaintiffs' proposed amended complaint to the extent it seeks to add new claims based on Galios' use of non-deadly force, which were neither included in the Court's grant of leave nor discussed in Plaintiffs' motion to amend.

Federal Rule of Civil Procedure 15(a)(2) states that a party may amend a complaint before trial "with the opposing party's written consent or the court's leave" and that the "court should freely give leave when justice so requires." Though Rule 15(a) is "very liberal . . . a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Undue delay cannot alone justify the denial of a motion to amend. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001). The most important factor is prejudice to the opposing party. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971).[1]

### 1. Prejudice to the opposing party

Galios' arguments regarding prejudice fall within three categories: 1) lack of discovery; 2) inability to file dispositive motions; and 3) harm to strategy.

Regarding discovery, Galios asserts that the new Fourteenth Amendment claim would require additional discovery because the claim includes a subjective element, whereas the Fourth Amendment claim—the only claim currently in the case—involves only an objective inquiry. Galios contends that he has neither had an opportunity for discovery into the new claim nor an

---

[1] Galios argues that Plaintiffs must also show "good cause" under Federal Rule of Civil Procedure 16 for amending the operative complaint. The Court disagrees. "Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's standards control[]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Because the pretrial scheduling order in this case did not set a deadline for amending the pleadings (*see* Dkt. No. 39), Plaintiffs do not need to show "good cause" to modify the scheduling order to amend the complaint. In any event, there is "good cause" for the amendment for the reasons stated elsewhere in this Order.

1   opportunity to evaluate the evidence Plaintiffs intend to use to support the claim.  The Court is not

2   persuaded that Galios' concerns, though valid, constitute prejudice.  While Plaintiffs' proposed

3   Fourteenth Amendment claim appears to require a finding that Galios acted with some sort of

4   subjective awareness or intent,[2] Galios fails to articulate what additional discovery he anticipates

5   producing to defend the claim, as well as what additional discovery he anticipates Plaintiffs will

6   produce to prove their claim.  Beyond asking Galios a few additional questions on the witness

7   stand regarding his state of mind, the Court does not envision any evidence that will be presented

8   at trial to prove the Fourteenth Amendment claim that would not have already been presented at

9   trial absent the claim.  In all likelihood, the jury will be asked to simply infer that the subjective

10  element is satisfied based on the same evidence that would support a finding that Galios' use of

11  deadly force was unreasonable under the Fourth Amendment; in other words, with respect to

12  liability, there is nearly identical overlap between the two claims.  To the extent Galios' concern is

13  that Plaintiffs will seek to introduce his personnel records, the Court notes that, as addressed

14  below, Plaintiffs have expressly stated in response to Galios' motion in limine to exclude

15  personnel record that they would not seek to introduce evidence of such record.  Accordingly,

16  Plaintiffs shall not be permitted to introduce such evidence at trial to prove their new Fourteenth

17  Amendment claim.

18       To facilitate and expedite the anticipated *de minimis* discovery into the subjective element

19  of the Fourteenth Amendment claim, the Court ORDERS Plaintiffs to respond to any interrogatory

---

[2] Specifically, an officer violates the right of familial association protected under the Fourteenth Amendment only by acting in a matter that "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  The shocks the conscience standard is met by showing that either the officer acted with "deliberate indifference" or, if deliberation is not practical, that the officer acted with a "purpose to harm," a showing that is "more demanding" than deliberate indifference. *Id.* at 1137-38.  While the parties appear to disagree as to which showing is required, a subjective element is included in the purpose to harm standard, *see A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (holding in use of deadly force case that "[t]he purpose to harm standard is a subjective standard of culpability"), and is also likely included in the deliberate indifference standard (though the Court finds no case directly on point), *see Tamas v. Dep't of Social & Health Servs.*, 630 F.3d 833, 845 (9th Cir. 2010) (extending the dual examination of objective and subjective components under the deliberate indifference standard in the prison context to the foster care context).  The issue of which standard applies—purpose to harm or deliberate indifference—and whether the latter standard includes a subjective component can be resolved through jury instructions.  The Court accordingly ORDERS the parties to submit proposed jury instructions on the issues **by no later than two weeks from the date of this Order**.

served on them concerning the new claim by no later than one week after receiving a copy of the interrogatory.

The Court is also not persuaded that Galios' inability to file a dispositive motion on the new claim before trial constitutes prejudice. If, after Plaintiffs' case is presented to the jury, Galios believes that he is entitled to judgment on the Fourteenth Amendment claim, Galios may move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Further, the Court is not persuaded that the evidence presented in support of the new claim will "taint" the jury such that Galios will be prejudiced if the claim is belatedly adjudicated in his favor. (Dkt. No. 109 at 18.) As discussed above, there is nothing in the parties' submissions that indicates that the evidence in support and defense of the claim will materially differ from the evidence the jury will already hear on the Fourth Amendment claim. To the extent Galios argues that any discussion of his subjective intent may ultimately confuse the jury in distinguishing between the relevant standards under the Fourth and Fourteenth Amendments, the jury instructions will clearly delineate the standards of the claims that remain once the evidence has been submitted.

Galios also appears to argue that if the claim is presented to the jury, it would prejudice him because a finding that Galios acted with a purpose to harm "could form a basis for a potential punitive [damages] finding." (Dkt. No. 109 at 18 ("It would be more of a longshot for the jury to find punitive damages if they simply deemed that Ofc. Galios acted in an objectively unreasonable manner than if they found he acted with a 'purpose to harm' . . . .").) While a jury's finding in favor of Plaintiffs on the Fourteenth Amendment claim would not bode well for Galios in many respects, that is hardly the type of prejudice that Rule 15 addresses.

Finally, Galios asserts that allowing in a new claim would "be a huge windfall for only one side" and that it would be the equivalent of a sports referee changing the rules in the middle of the match. (Dkt. No. 109 at 19.) Not so. Rule 15 expressly allows for the addition of new claims—regardless of when in the "match" the motion is made—so long as the rule's requirements are met. That a new claim will be added to the case cannot alone form the basis for prejudice as the addition of new claims is precisely what Rule 15 envisions. Moreover, Galios' motions in limine plainly reveal that he believed, albeit erroneously, that damages available only under the

4

Fourteenth Amendment—the loss of familial relations—were already at issue in this Fourth Amendment case. For example, as discussed below, Galios seeks to exclude evidence of Minter's relationship with his mother on the ground that the relevant damages are the loss of familial relations between Minter and his children, not Minter and his mother. (*See* Dkt. No. 89 at 3 ("The issue on damages is the relationship between Decedent and his children.").) Thus, Galios should be well-prepared to execute his trial strategy with respect to Fourteenth Amendment damages.

### 2. Bad faith

Galios next contends that Plaintiffs' bad faith is demonstrated on the face of the proposed Third Amended Complaint attached to Plaintiffs' motion to amend. While the Court agrees with Galios that the proposed Third Amended Complaint is not accurate (and part of it will be stricken as a result, as discussed below), the Court is not persuaded that the inaccuracies were made in bad faith; rather, they appear to be careless errors that result from the use of a caption from a previous version of the complaint.

### 3. Undue delay in the proceedings

Galios does not argue that the proposed amendment would produce an undue delay in the proceedings; rather, Galios contends that Plaintiffs have unduly delayed bringing their motion because they knew or should have known long ago that a Fourteenth Amendment claim did not exist in this case. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("A second factor in determining whether the district court properly denied the motion for leave to amend is whether appellants unduly delayed in filing their motion."). While it should have been apparent to Plaintiffs for some time that a Fourteenth Amendment claim was not in this case, Plaintiffs did not delay in bringing this motion once they realized that a Fourteenth Amendment claim was required to seek damages arising from the loss of familial relations between them and Minter. Further, the Court cannot conclude that Plaintiffs should have realized the limitation on damages for their Fourth Amendment survivor's claim earlier when *Galios himself* only realized the limitation just prior to the pretrial conference. The Court accordingly finds that Plaintiffs did not unduly delay in filing their motion.

### 4. Futility

Based on the Fourth Amendment claim summary judgment record, the Court cannot conclude that Plaintiffs' Fourteenth Amendment claim would be futile.

The Court accordingly GRANTS Plaintiffs' motion to amend to add a Fourteenth Amendment claim. However, the proposed amended complaint attached to motion is overbroad and contains several inaccuracies that are STRICKEN—namely, 1) Rhonda Minter is not an individual plaintiff in this case; 2) there is no claim for either wrongful death or a *Monell* violation; and 3) this is not the second amended complaint; it is the *third* amended complaint. Further, the proposed amended complaint includes new allegations in support of Plaintiffs' Fourth Amendment claim that appear to set forth separate claims for Galios' alleged use of excessive force in tasing Minter and striking him with a flashlight. Plaintiffs' proposed Fourteenth Amendment claim includes similar allegations. These new allegations are outside the scope of Plaintiffs' pending motion and the allegations are therefore STRICKEN. The only new claim allowed is a Fourteenth Amendment claim arising from the shooting.

### B. Defendant's Motion in Limine No. 1: Exclude expert opinions and evidence

Expert testimony is only admissible to the extent it "address[es] an issue beyond the common knowledge of the average layman." *Mukhtar v. Cal. State University, Hayward*, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Evid. 702. Expert opinion is therefore improper when it ventures into issues "the jury is well equipped to determine intelligently and to the best possible degree . . . without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc*., 618 F.3d 1025, 1040-41 (9th Cir. 2010) (internal quotation marks and citation omitted). An expert may not provide "impermissible legal conclusions or make credibility determinations reserved for the trier of fact." *Engman v. City of Ontario*, 2011 WL 2463178, at *8 (C.D. Cal. June 20, 2011). To the extent the evidence is otherwise admissible, "expert testimony concerning an ultimate issue is not per se improper," but "an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Mukhtar*, 299 F.3d at 1065 n.10 (citations omitted). In excessive force

1   cases, an expert may not opine on whether the "Defendants' use of force was reasonable under the
2   circumstances" as this "is just such an opinion on an ultimate issue of law that risks usurping the
3   jury's province." *Martinez v. Davis*, 2011 WL 486255, at *3 (C.D. Cal. Feb. 4, 2011); *see also*
4   *Jimenez v. Sambrano*, 2009 WL 2382622, at *2 (S.D. Cal. July 31, 2009) (noting that "whether
5   Defendants' use of force was unreasonable or excessive is an ultimate issue of law in this case"
6   and therefore the expert's "opinions in this regard are inadmissible").

### 1. Finding No. 1: Expert opinion as to probable cause for the traffic stop

Galios seeks to exclude the opinion of Plaintiffs' police procedures expert Timothy T. Williams Jr. that Galios lacked probable cause to initiate the traffic stop. The motion is GRANTED. There is no claim in this case asserting that the traffic stop violated the constitution so Williams' opinion as to the constitutionality of the stop is irrelevant. Even if evidence regarding the truthfulness of Galios' reason for initiating the stop is admissible (which is discussed further below), *Williams'* testimony is still inadmissible because it is not relevant to whether Galios is trustworthy.

### 2. Finding Nos. 2, 3, 4: Galios' decision to chase, tase, and strike Minter

Glaios also seeks to exclude Williams' opinion as to the propriety of Galios' decisions to chase Minter, tase Minter, and strike Minter with a flashlight. Galios contends that the opinions should be excluded because they are not relevant in determining whether the use of deadly force was reasonable. The motion is GRANTED in part and DENIED in part.

As the Court held on summary judgment, that Galios' decision to run after Minter may have been contrary to police protocol does not preclude Galios' use of deadly force when he has probable cause to believe that Minter poses a significant threat of death or serious physical injury. *See Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002) ("[T]he fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself."). Rather, if "an officer intentionally or recklessly provokes a violent response, and the provocation is an independent constitutional violation, that provocation may render the officer's otherwise *reasonable* defensive use of force *unreasonable* as a matter of law." *Id.* at 1190-91. Plaintiffs provide no showing, or even argument, that Galios' decision to chase

7

Minter exceeded negligence such that it could be considered an independent constitutional violation. Further, Plaintiffs make no argument that Galios' actions in tasing Minter and striking him with a flashlight "intentionally or recklessly provoke[d]" Minter in pointing his gun at Galios. *Id.* Indeed, Plaintiffs maintain Minter never pointed a gun at Galios. Thus, to the extent the opinions are offered to show that Galios' negligent conduct precluded the use of deadly force, the opinions are excluded and the motion is GRANTED.

At the pretrial conference, Plaintiffs asserted that the opinions are nevertheless relevant to show the escalation of the incident in terms of the errors in Galios' decision-making. In other words, Plaintiffs contend that Galios' use of excessive force against Minter immediately before shooting him makes it more likely that Galios' use of deadly force was also unreasonable. The Court concludes that the opinions are admissible for this limited basis and therefore DENIES the motion to the extent it seeks to exclude the opinions entirely. The Court notes that the jury instructions will clearly identify for the jury the use of force at issue in this case: Galios' use of deadly force.

### 3. Findings Nos. 5, 6, 7: Whether the investigation regarding the gun was complete and thorough

Galios seeks to exclude Williams' opinion that a forensic examination should have been done to corroborate 1) that Minter had "custody and control" of the gun found at the scene (finding No. 5); 2) that Minter had the gun in his waistband (finding No. 6); and 3) that Galios grabbed the gun (finding No. 7). Galios argues these opinions are irrelevant because the investigation was out of Galios' control and was conducted by the Contra Costa County District Attorney's Office. Plaintiffs respond that Williams' opinions are proper because both sides intend to call law enforcement witnesses who will testify regarding the evidence observed, collected, and processed. Plaintiffs assert that the jury should know whether those collection and processing efforts were done according to applicable standards of practice.

Because Williams' testimony would assist the jury in evaluating whether the evidence collected and processed in this case comprises a complete picture of what happened—so the jury can assess the weight to be given to the evidence—the opinions will be admitted with a limitation.

8

1    Plaintiffs shall not use the opinions to show what *should* have been done, rather than merely what
2    *could* have been done.  If the focus is on the former, the jury may improperly use the testimony to
3    find Galios liable because the investigation was subpar; if the focus is only on the latter, the
4    testimony can properly assist the jury in evaluating merely whether the investigation produced all
5    the reasonably discoverable facts in this case and thus the weight to be given to the discovered
6    facts—regardless of whether the investigation fell below the applicable standards of practice.
7    Thus, Williams' opinions are limited to only what else the investigators could have investigated
8    but did not investigate.

### 4. Findings Nos. 8 & 9

Galios objects to these findings on the basis that Williams is improperly making factual and legal conclusions for the jury.  Plaintiffs agree that such opinions are inadmissible, and clarify that Williams will simply testify to the applicable standard of practice and opine as to what conduct does and does not meet that standard.  Given the parties' agreement on the issue, the Court GRANTS the motion to the extent Williams will make factual and/or legal conclusions.[3]

### C. Defendant's Motion in Limine No. 2: Exclude Evidence regarding the lawfulness of the traffic stop

Galios moves to exclude evidence regarding the legality of the initial traffic stop, arguing that whether the stop was illegal is irrelevant to his use of deadly force.  Plaintiffs assert that, "[i]rrespective of probable cause," Galios' credibility "is at issue for all purposes."  (Dkt. No. 88 at 2.)  Thus, while Plaintiffs concede that whether probable cause existed for the stop is not relevant, Plaintiffs maintain that it is relevant to inquire whether Galios told the truth as to why he initiated the traffic stop.  Galios' opposition to the motion does not address whether his credibility may be attacked in this manner.

Plaintiffs assert that Galios' credibility as to the reason for the traffic stop is relevant because "if the jury finds that Galios was not truthful about why he stopped the car . . . it may

---

[3] Galios' objections to findings numbers 10 and 11, as well as the introduction of any expert opinion as to "taser cam" evidence, are denied as moot given Plaintiffs' representation that they will not produce the challenged evidence at trial.

affect the jury's evaluation of his credibility on other matters." (*Id.*) In other words, Plaintiffs want to present evidence showing that Galios lied about the reason for the traffic stop, which can support an inference that Galios also lied about other aspects of the encounter, such as whether Minter pointed a gun at him. While Federal Rule of Evidence 404(a)(1) prohibits "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait," Rule 404(a)(3) provides an exception under Federal Rule of Evidence 608(b), which states that "the court may, on cross-examination, allow [specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness] if they are probative of the character for truthfulness or untruthfulness of [the witness]." Rule 608(b) further provides that extrinsic evidence is *not* admissible to prove specific conduct in order to attack or support the witness's character for truthfulness. Thus, Plaintiffs may question Galios on cross-examination as to whether his reason for initiating the traffic stop was truthful, but they cannot present extrinsic evidence—such as testimony from the officers who examined the license plate light—to prove that Galios was lying about the light malfunction.

Finally, because Galios' credibility regarding his reason for initiating the traffic stop is probative of Galios' credibility as to the events that occurred subsequent to the stop, and because the probative value is not "substantially outweighed" by the danger of unfair prejudice, exclusion of this evidence is not appropriate under Federal Rule of Evidence 403.

**D.   Defendant's Motion in Limine No. 3: Exclude Rhonda Minter's testimony regarding her relationship with her son**

This motion is denied as moot since Plaintiffs represent that Rhonda Minter will testify to only the relationship between her son and her son's children—not *her* relationship with her son.

**E.   Defendant's Motion in Limine No. 4: Exclude evidence of personnel related matters of Galios**

This motion is also denied as moot because Plaintiffs represent that they will not present any evidence of Galios' conduct outside of this incident.

//

//

**F.     Plaintiffs' Motion in Limine No. 1: Exclude all evidence and/or references relating to Minter's criminal history and alleged gang affiliation**

Plaintiffs contend that evidence of Minter's criminal history is irrelevant because it is undisputed that Galios did not know about it when he used deadly force against Minter. Galios insists that such evidence is relevant for two reasons: 1) to show that Minter had a motive to attempt to murder Galios—namely, to avoid returning to prison for being in violation of his parole, and 2) in assessing damages. Galios states that he will not seek to introduce any evidence of Minter's purported gang affiliation.

Even though Galios did not know about Minter's parole status during the encounter, such evidence may be admitted because it is relevant in determining whether Minter pointed his gun at Galios—the key factual dispute in this case. *See Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."). Galios asserts that he can show that Minter was on parole; he was in violation of his parole; if he was apprehended, he would have returned to jail; he knew he was in violation of parole; he knew he would return to prison due to his parole violation; and he did not want to turn himself in for his parole violation because he did not want to return to prison.[4] This evidence has a tendency to make Minter's pointing the gun at Galios more probable because it supplies a motive for Minter's actions—*i.e.*, Minter threatened to shoot or attempted to shoot Galios as a last-ditch effort to avoid capture and a return to prison. Cases that have excluded similar evidence are distinguishable as they involved circumstances where the decedent was not knowingly in violation of parole and subject to re-imprisonment upon his capture. For instance, the court in *Stringer v. City of Pablo*, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009) excluded "evidence of prior convictions," including that the decedent knew he would be facing his "third strike" if arrested, where defendants failed to "persuasively articulate[] how Decedent's

---

[4] Although Plaintiffs do not challenge Galios' proffered evidence regarding Minter's stated desire to not return to prison, *i.e.*, his statements to and conversations with his aunt, Dana Buford, such statements would be admissible hearsay as statements of the declarant's "existing state of mind." Fed. R. Evid. 803(3).

11

1  prior convictions lend support to the Officers' account of how Decedent acted when they tried to
2  detain him." Although *Stringer* does not provide many details of the underlying incident in the
3  case, it is apparent that the decedent's resistance in *Stringer* was to avoid arrest and *possible*
4  imprisonment; here, because of Minter's in-violation-of-parole status, Minter's arrest meant a
5  virtual *guarantee* of imprisonment, as Minter is alleged to have known and previously avoided.  In
6  addition, *Cotton v. City of Eureka*, 2010 WL 5154945, at *6 (N.D. Cal. Dec. 14, 2010) is similarly
7  distinguishable because the defendants there simply argued that the decedent's recent release from
8  prison "corroborated" the officers' description of the decedent's actions in resisting arrest for
9  simple assault.  The court rejected the defendants' argument as "nothing more than unsupported
10 conjecture."  *Id.*  The same cannot be said here, where Minter's in-violation-of-parole status
11 translates to a salient theory of motive to resist arrest and avoid guaranteed imprisonment.

12  Only evidence seeking to establish the basic facts of Minter's parole status will be
13 admitted to show motive; namely, 1) he was on parole; 2) he was in violation of his parole; 3) if he
14 was apprehended, he would have returned to jail; 4) he knew he was in violation of parole; 5) he
15 knew he would return to prison due to his parole violation; and 6) he did not want to turn himself
16 in for his parole violation because he did not want to return to prison.  While the Court is
17 cognizant that Minter's parole status may prejudice the jury against Plaintiffs, any such prejudice
18 does not substantially outweigh the probative value of the evidence.  *See* Fed. R. Evid. 403.

19  At the same time, some of Galios' evidence regarding Minter's criminal history is
20 irrelevant and prejudicial to Plaintiffs.  Specifically, included in Galios' anticipated evidence is an
21 arrest warrant for Minter's parole violation that specifies that Minter "should be considered armed
22 and dangerous."  While the existence of the arrest warrant, and Minter's knowledge of his parole
23 violation, is relevant, that Minter "should be considered armed and dangerous" is not because it
24 has nothing to do with Minter's motive to avoid jail and is obviously prejudicial.  Nor would the
25 underlying crimes giving rise to the parole be relevant, including whether they were felony crimes.
26 Evidence regarding the length of any prison term Minter would be expecting to face if Galios
27 apprehended him is also not relevant because there is no indication that Minter knew how long he
28 would be imprisoned for violating his parole, let alone for the new crimes Galios' asserts he

committed the night he was killed.  Finally, although the length of time Minter was in violation of his parole is somewhat probative—because the jury may be able to infer that a person in violation of his parole for 13 months would have more of an incentive to avoid apprehension than a person who violated his parole just the previous day—the potential for prejudice substantially outweighs any such probative value.  The evidence is not very probative because the length of time Minter was in violation of his parole is secondary and cumulative of the evidence Galios' seeks to admit to establish motive; the evidence is prejudicial because the jury would likely have a negative view of a person who was knowingly in violation of his parole for 13 months.

Turning to damages, Minter's parole violation is also probative of Minter's relationship with his children before this incident because Minter's fugitive status tends to show that he would have had less contact with his children because Minter was trying to hide his whereabouts and avoid capture.  And if/when Minter was eventually captured, he would have returned to jail, thus further reducing his contact with his children.  However, to the extent Galios seeks to admit Minter's previous prison sentences to show that Minter did not have strong contacts with his children, Galios fails to explain why the underlying reason for the lack of contact with his kids is relevant.  If such evidence of Minter's prison time is admitted, the information may prejudice Plaintiffs because the jury would likely view Minter's criminal history unfavorably and could use the information improperly in reaching a verdict.  *See Cotton*, 2010 WL 5154945, at *6 ("Defendants have made no showing that in calculating Plaintiffs' damages the jury must be made aware of the reason for the separation, *i.e.*, his incarceration, which the Court finds to be potentially inflammatory under [Rule 403]."). Thus, Minter's in-violation-of-parole status should be admitted for the additional reason of relevance to damages, but Minter's previous prison terms should be excluded because their prejudicial effect outweighs the probative value.

**G.     Plaintiffs' Motion in Limine No. 2: Exclude any reference to Minter's kids being born out of wedlock**

Plaintiffs assert that references to them being born out of wedlock are prejudicial and not probative.  Although the relevant inquiry focuses on the relationship between the deceased and the deceased's children—rather than between the deceased and the deceased's children's other

13

1  parent—Galios may reference the fact that the Plaintiffs were born out of wedlock since the fact is
2  undisputed and assists in telling the story of Minter's relationship with Plaintiffs.  Further, the
3  Court is not persuaded that the evidence is prejudicial to Plaintiffs since the quality of Plaintiffs'
4  relationship with their father is not dependent on their parents' marital status.  The motion is
5  accordingly DENIED.

**H.     Plaintiffs' Motion in Limine No. 3: Exclude Galios' crime scene expert from offering an opinion on the credibility, believability, or truthfulness of any witness**

Plaintiffs appear to take issue with the expert's opinion to the extent it adopts Galios' version of the events given two years after the incident, rather than his version given the night of the shooting.  Contrary to Plaintiffs' objection, there is no suggestion that the expert will testify as to which version of Galios' account is truthful, or whether Galios is a credible witness.  The expert's mere consideration of Galios' current version of the events in forming his opinion does not constitute an opinion as to Galios' credibility, believability, or truthfulness.  Plaintiffs' motion is accordingly DENIED.

**I.     Plaintiffs' Motion in Limine No. 4: Exclude Minter's purported statement regarding his "hammer"**

Plaintiffs move to exclude testimony regarding Minter's reference to his "hammer" in a statement made to Eulah Mitchell hours before the shooting.  The statement was made in the context of Minter having recently encountered a group of men whom Minter perceived were threatening him, and who backed-off when they saw Minter's "hammer."  While the evidence is relevant to show that Minter possessed a gun, it is hearsay that does not fall within any exception.

Galios' argument that the statement is not hearsay because it is a party admission under Rule 801(d)(2)(A) is unpersuasive.  Galios asserts that "[Minter] is the true party in interest in this case and the Plaintiffs are in privity with Decedent."  (Dkt. No. 92 at 4.)  However, as explained in *In re Cornfield*, 365 F. Supp. 2d 271, 277 (E.D.N.Y. 2004), *aff'd,* 156 Fed. Appx. 343 (2d Cir. 2005), and *Huff v. White Motor Corp.*, 609 F.2d 286, 290 (7th Cir. 1979), privity-based admissions, while admitted at common law, were not adopted into the Federal Rules of Evidence:

> The Court concludes that Alan Cornfield's statement does not fall

14

> within the ambit of Rule 801(d)(2)(A). The "question of whether a decedent's statement is properly admitted as an admission of a party opponent against the decedent's estate is properly treated as a question of privity based admissions." Wright & Miller, Federal Practice & Procedure § 7019 n.1. At common law, statements made by those in privity with a party to the action were considered admissions of that party. *See Huff*, 609 F.2d at 290. As explained in *Huff v. White Motor Corporation*, Rule 801(d)(2)(A) altered the common law rule by providing only for the admission of statements made by a party to the action. Privity-based admissions were abolished. *See Id.* at 290–91 ("At common law, privity based admissions have been generally accepted by courts . . . . The admissibility of privity-based admissions in the federal courts is now controlled, of course, by the Federal Rules of Evidence . . . [Such admissions] . . . are not among the specifically defined kinds of admissions that despite Rule 801(c) are declared not to be hearsay in Rule 801(d)(2)"); Wright & Miller, Federal Practice & Procedure § 7019. Notably, Rule 801(d)(2)(A) provides for several types of party-opponent admissions—such as adoptive admissions, or statements made by an agent—but does not include any provision concerning privity-based admissions. *See* Wright & Miller, Federal Practice & Procedure § 7019; McCormick on Evidence § 260 (5th Ed. 1999).

*In re Cornfield*, 365 F. Supp. 2d at 277. While the Sixth Circuit has ruled to the contrary, its holding is unpersuasive as it does not address the failure of the Federal Rules to include privity-based admissions among the several different types of admissions in Rule 801(d)(2); rather, the court simply deems the decedent's statement a "classic example of an admission." *See Estate of Shafer v. C.I.R.*, 749 F.2d 1216, 1220 (6th Cir. 1984).

Nor does the statement fall under any exception to the hearsay rule, at least on the present record before the Court. It was not a present sense impression because there is no showing that the statement was made "while or immediately after [Minter] perceived" his encounter with the males outside the car. Fed. R. Evid. 803(1). Galios simply asserts that the statement was made "shortly" after the encounter. The statement was not an excited utterance because there is no showing that Minter was "was under the stress of excitement" when he made the statement. *Id.* at 803(2). At trial, Galios may make an offer of proof to the Court outside the presence of the jury as to whether the statement is encompassed by Rule 803(1) and/or 803(2).

The statement was also not a statement against interest. Federal Rule of Evidence 804(b)(3)(A) defines a statement against interest as a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when

made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Because the statement was made to Minter's acquaintance in a private setting, the statement did not reasonably expose Minter to criminal liability. Indeed, such statements to a friend or an acquaintance could just as likely be false since the declarant may wish to boast his criminal conduct in order to impress the person. Finally, the statement does not fall within the residual exception to hearsay since the statement has no "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1).

The motion is accordingly GRANTED.

## J. Motion to Bifurcate

Galios moves to bifurcate the issues of liability and punitive damages at trial. Federal Rule of Civil Procedure 42(b) provides that "for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Galios asserts that bifurcation is appropriate because it would prevent evidence of his financial circumstances from reaching the jury, which he contends could prejudice him if presented during the liability phase. Plaintiffs do not oppose the motion. Because bifurcation would avoid prejudice, the Court GRANTS Galios' unopposed motion.

## CONCLUSION

Given the changes in this case since the initial pretrial conference, and the need to narrow the number of witnesses and set time limits, the Court sets a further pretrial conference for Thursday, April 3, 2014 at 2:00 p.m. The parties are further ordered to file proposed jury instructions for the new Fourteenth Amendment claim no later than two weeks from the date of this Order. Finally, Plaintiffs shall respond to any interrogatory served on them concerning the new claim by no later than one week after receiving a copy of the interrogatory.

Jury trial will commence on April 14, 2014 at 8:30 a.m. in Courtroom D on the 15th Floor. The jury panel will be brought in around 9:00 a.m. at which point the Court will voir dire the jury. Each party shall have 30 minutes to voir dire the jury when the Court is done. Each party may exercise three peremptory challenges, and the Court will empanel a jury of eight, with no

alternates. Monday through Wednesday, as well as Friday, the Court will recess at 2:30 or 3:00 p.m. with a break around 10:00 a.m. and a 45 minute lunch break around noon. On Thursday, April 17, 2014, the Court will recess at 1:00 p.m.

This Order disposes of Docket Nos. 86-90, 92-95, and 108.

**IT IS SO ORDERED.**

Dated: March 17, 2014

*Jacqueline S. Corley*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge